**ROBINSON BROG LEINWAND GREENE
 GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
*Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **DEFINITIONS PRIVATE TRAINING GYMS, INC.,** | Case No: 17-10848 (JLG) |
| Debtor. | |

---------------------------------------------------------X

**PLAN OF REORGANIZATION
OF DEFINITIONS PRIVATE TRAINING GYMS, INC.**

*THE DEBTOR IN THIS CASE IS A SMALL BUSINESS. AS A RESULT, THE DEBTOR IS PERMITTED TO DISTRIBUTE AND HAS DISTRIBUTED THIS PLAN AS A DISCLOSURE STATEMENT TO PROVIDE YOU WITH ADEQUATE INFORMATION. IF AN OBJECTION TO THIS PLAN AS A DISCLOSURE STATEMENT IS FILED BY A PARTY IN INTEREST, FINAL APPROVAL OF THIS PLAN AS A DISCLOSURE STATEMENT WILL BE CONSIDERED AT OR BEFORE THE HEARING ON CONFIRMATION OF THE PLAN.*

*THIS PLAN CONTAINS (I) AN INJUNCTION INTENDED TO PROTECT THE DEBTOR FROM SUITS OR CLAIMS THAT MAY BE ASSERTED BY CREDITORS OR OTHER PARTIES-IN-INTEREST AND (II) RELEASES INTENDED TO PROTECT THE DEBTOR AND ITS SOLE EQUITY HOLDER FROM SUITS OR CLAIMS THAT MAY BE ASSERTED BY CREDITORS AND OTHER PARTIES IN INTEREST.*

*YOU ARE ENCOURAGED TO READ ARTICLE 9 FOR DETAILS ABOUT SUCH RELEASES AND INJUNCTIONS.*

# ARTICLE 1
# SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of **Definitions Private Training Gyms, Inc.** (the "Debtor") from cash on hand, cash flow from operations, and from the Debtor's principals.

This Plan provides for one class of tax claims, including secured and priority, two classes of secured claims, one class of unsecured claims and one class of equity security holders. Unsecured creditors holding allowed claims will be paid 15% of their allowed claims in three annual installments without interest. This Plan also provides for the payment of the Debtor's professionals who have agreed to be paid either in full or over time. The tax claims primarily are the claims of New York State and the Internal Revenue Service, will be paid over a five-year period from the order for relief in accordance with section 1129 of the Code.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

The purpose of a disclosure statement is to provide creditors and holders of interests with such information as would enable a hypothetical, reasonable individual or entity typical of the holders of claims or interest to make informed judgments in voting on the Plan. Because the Debtor is a small business, as defined by the Code, this document is designed to be both a plan of reorganization and a disclosure statement. The disclosure statement portion of this Plan necessarily involves a series of compromises between extensive "raw data" and the legal language in documents or statutes on the one hand and considerations of readability and usefulness on the other. For further information, you should examine the following pages carefully and you may wish to consult your legal and financial advisors. Since there are no impaired classes of creditors and claims that are not impaired may not vote, as they are conclusively presumed, pursuant to the Code to have accepted the Plan, no creditors' votes are being solicited by the Debtor.

## CONFIRMATION

### Confirmation of the Plan

On **_____, 2018 at \_\_:00 a/p.m.**, a hearing will be held before the **Honorable James L. Garrity, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, Alexander Hamilton Courthouse, New York, New York 10004**, to consider the Debtor's request final approval of the adequacy of the information in the Plan and for confirmation of the Plan (the "Confirmation Hearing"). The Confirmation Hearing may be continued from time to time without further notice, by announcement in open court on the day of the scheduled hearing or any continuance thereof.

Any creditor or party in interest who wishes to object to the adequacy of the information in the Plan and/or to confirmation of the Plan, must file a written objection with the Clerk of the Bankruptcy Court, One Bowling Green, Alexander Hamilton Custom House, New York, New York 10004, and serve copies on counsel to the Debtor whose name and address appears on the cover page of this Plan. Such objections shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Court for the Southern District of New York, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF) (with two hard-copies delivered directly to Chambers), and shall be served in accordance with General Order M-242, on or before 5:00 p.m. and received by counsel to the Debtor by_____, 2018.

THE DEBTOR BELIEVES THAT THE PLAN PROVIDES FOR THE BEST AVAILABLE RECOVERY TO ITS CREDITORS. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN BEFORE ITS SUBSTANTIAL CONSUMMATION.

Requirements for Confirmation

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified claims and interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the chapter 11 case, (v) the Plan is in the "best interests" of all creditors and interest holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of creditors in the class entitled to vote on the Plan. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

Best Interest Test.

The so-called "best interest" test requires that each impaired creditor and impaired interest holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date (as defined in § 8.02) of the Plan, that is not less than the value such entity would receive or retain if the Debtor were to be liquidated under chapter 7 of the Code.

To determine what the holders in each class of claims or interests would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar

{00900156.DOC;2 }
3

amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case. The amount that would be available for satisfaction of allowed claims against and allowed interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the chapter 7 case. Such amount would be reduced by the amount of any claim or claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional administrative claims and priority claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a chapter 7 liquidation on the date of confirmation of the Plan.

The costs of liquidation under chapter 7 would become administrative expense claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, brokers, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation. In addition, chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the case in chapter 11.

After satisfying administrative expense claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this chapter 11 case was pending under chapter 11, including compensation for attorneys.

After consideration of the effects that a chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to the trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of the Debtor's assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail, (iii) the potential increases in claims which would be satisfied on a priority basis or on a parity with the claims of unsecured creditors and (iv) the substantial amount of secured and priority obligations in this case, the Debtor believes that in a chapter 7 liquidation there would be no funds available for distribution to unsecured creditors.

Liquidation Analysis.

The Debtor has concluded that the Plan provides to each creditor and interest holder a recovery with a present value at least equal to the present value of the distribution that such person would receive if the Debtor was to be liquidated under chapter 7 of the Code. The Plan restructures the Debtor's secured claims and tax claims and pays unsecured claims 15% of their claims over a period of 3 years. In a liquidation scenario, there would be insufficient funds to satisfy the Debtor's administrative and secured obligations and no other funds to satisfy other claims. Accordingly, the Debtor believes that the Plan provides creditors with at least as much as they would be entitled to receive in a chapter 7 liquidation. The Debtor has scheduled assets

of approximately $350,000 and secured claims in the approximate amount of $780,000. Accordingly, should the Debtor's assets be liquidated there would not be enough funds to satisfy secured claims, let alone any other claims. Additionally, approximately $310,000 of the Debtor's $350,000 in scheduled assets are security deposits held by the Debtor's landlords. Should the Debtor be liquidated, it is likely that the Debtor's leases will not be assumed and the $310,000 in security deposits will be further decreased to satisfy the landlord's claims as a result of the termination of their leases.

Feasibility.

For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is set forth in the Plan. This Plan calls for the reorganization of the Debtor through a cash on hand and from cash generated from the operation of the Debtor's business. Further the Debtor's principals will backstop any payments that cannot be made from the Debtor's available cash or operations. Thus, the Plan meets the feasibility requirements of the Code. It is anticipated that the Debtor's operations will result in positive cash flow after the payment of ordinary operating expenses as set forth in the Debtor's projections, which will be filed prior to the hearing on the conditional approval of this plan as a disclosure statement.

Confirmation with the Acceptance of Each Impaired Class.

The Plan may be confirmed if each impaired class of claims or interests accepts the Plan. Classes of claims or interests which are not impaired are deemed to have accepted the Plan. A class is impaired if the legal, equitable or contractual rights attaching to the claims or interests of that class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of claims or interests impaired by the Plan are entitled to file ballots accepting or rejecting the Plan. Holders of claims or interests not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan. Holders of claims or Interests that will neither receive nor retain any property under the Plan are deemed to reject the Plan.

The Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of claims of that class. Only those claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the holders of two-thirds in amount and (b) more than one-half in number of the claims in each class who actually vote on the Plan.

In the event that any impaired class of claims does not accept the Plan, the Debtor may seek a "cram down" Confirmation of the Plan pursuant to section 1129(b) of the Code.

Confirmation Without the Acceptance of Each Impaired Class.

In the event that any impaired class of claims or interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Code are satisfied, (ii) at least one impaired class of claims votes to accept the Plan without regard to any vote cast on account of a claim held by "insiders" (as defined in the Code) and (iii) as to each impaired class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting class. The Debtor believes that the Plan is in the best interest of all creditors and interest holders and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan. Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Debtor believes that under the Plan all classes of impaired claims and impaired interests are treated in a manner that is consistent with the treatment of other classes of claims and interests with which their legal rights are intertwined, if any, and no class of claims or interests will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims and allowed interests in such class. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of claims or interests.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule." Subject to certain exceptions, this rule, codified in section 1129(b)(2) of the Code, generally requires that an impaired class of claims or Interests that has not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to secured claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of secured claims if the holders of such claims retain their liens and each holder of a claim of such class receives on account of such Claim deferred cash payments, totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the plan, of at least the value of such holder's interest in the property securing its claim.

With respect to unsecured claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. There is however a "new value" exception to the absolute priority rule which the Debtor submits applies in this case.

In this case, the Debtor's shareholders – Joseph Barron and Garry Steinhart – are each retaining their equity interests in the Debtor in consideration for: (1) contributing $251,000

to pay cure amounts with respect to the Debtor's leases with 133 E. 58th Street LLC and 17-19 Associates LLC, (2) Joseph Barron and Garry Steinhart's agreement to withdraw their scheduled claims in the aggregate amount of $153,000 and waive any distribution on account of their claims; (3) and a guarantee of payments to be made under the Plan. Mr. Barron and Mr. Steinhart will continue to manage the Debtor which will preserve the Debtor's ability to operate as a going concern and inures to the benefit of Debtor's creditors. The Debtor believes that the new value being contributed by Joseph Barron and Garry Steinhart is necessary and substantial. Without their financial contribution, the Debtor would be unable to assume its leases. Additionally, Mr. Barron and Mr. Stenihart have owned and operated gyms under the "Definitions" brand for over twenty years and have developed significant relationships with their employees and clients, without which, the Debtor's businesses would not survive. As Mr. Barron and Mr. Steinhart are retaining their equity interest post-confirmation on account of their going forward contribution to the Debtor's operations, and not on account of their prior equity positions, the Debtor submits that the "new value" exception to the absolute priority rule applies.

With respect to equity interests, section 1129(b)(2)(C) of the Code requires that the holder of such interest receive any fixed liquidation preference, fixed redemption price or the value of such interest <u>or</u> that no junior interest will receive or retain any property on account of such junior interest under the Plan. To the best of the Debtor's knowledge, interest holders are not entitled to any fixed liquidation preference or fixed redemption price. Moreover, the Debtor has determined that the value of such interest is **zero**. Finally, no junior interest receives or retains any property under the Plan on account of such interest. Accordingly, the Debtor believes the Plan complies with Section 1129(b)(2)(C) of the Code.

If the Plan is rejected by any class of claims, the Debtor requests that the Plan be confirmed under Section 1129(b).

**Voting Instructions**

As noted below, all classes of claims and interests are impaired by the Plan and accordingly all holders of claims and interests will be solicited for voting under this Plan. A holder of a claim or interest who is entitled to vote may accept or reject the Plan by executing and returning to the Debtor the ballot (a "Ballot") that was sent out with this Plan. The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Debtor.

<u>Deadline for Receipt of Ballots</u>

The solicitation period for votes accepting or rejecting the Plan will expire at 5:00 p.m., Eastern Standard Time, _____, 2017 (the "Voting Deadline"). A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof. A party entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact Debtor's counsel at the address indicated below, or call Robert M. Sasloff, Esq. at (212)

603-6329 to receive a replacement Ballot. Executed Ballots should be returned by the Voting Deadline to:

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue
New York, New York 10022
Attn: Robert M. Sasloff, Esq.

All classes of claims and interests are impaired under the Plan. All holders of claims interests are being solicited and are entitled to vote to accept or reject the Plan.

Ballots Executed in a Representative or Fiduciary Capacity.

Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

Voting Multiple Claims.

Any person who holds a claim in more than one class is required to vote separately with respect to each class in which such person holds a claim. However, any person who holds more than one claim in one particular class will be deemed to hold only a single claim in such class in the aggregate amount of all allowed claims in such class held by such person. Since only one class is voting under this Plan, each person need complete only one ballot.

Defects or Irregularities

**IN THE EVENT AN EXECUTED AND TIMELY FILED BALLOT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, THE BALLOTING AGENT SHALL NOTIFY THE CREDITOR OR INTEREST HOLDER WHICH HAS EXECUTED THE BALLOT SO THAT ALL BALLOTS THAT ARE CAST INDICATE EITHER AN ACCEPTANCE OR A REJECTION OF THE PLAN.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots. Except as set forth above, neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification. All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances. Unless otherwise directed by the Bankruptcy Court,

delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan

Revocation of Previously Filed Acceptances or Rejections

Any creditor or interest holder who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to counsel to the Debtor at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the claim or interest represented by such Ballot, (ii) be signed by the creditor or interest holder in the same manner as the Ballot was signed and (iii) be received by counsel to the Debtor on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

**The Debtor's History**

The Debtor operates two private training gym out of leased premises located at 19 Union Square West, New York, New York (the "Union Square Location") and 133 East 58th Street, New York (the "East 58th Street Location"). The landlord for the Union Square Location is 17-19 Associates LLC ("17-19 Associates"), while the landlord for the East 58th Street Location is 133 E. 58th Street LLC (133 E. 58th Street").. Due to rising costs and an unexpected downturn in business, the Debtor defaulted on its lease with 17-19 Associates.

On March 31, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Code, to preserve its rights under its leases with 17-19 Associates LLC and 133 E. 58th Street. The primary purpose of the Debtor's reorganization was to increase revenue so that it could remain current on its postpetition obligations as well as give itself enough breathing room to come up with a framework for assuming its leases for the Union Square Location and 58th Street Location. To that end, the Debtor was able to come to consensual agreements with 17-19 Associates and 133 E. 58th Street to assume their respective leases. Orders were entered by the Bankruptcy Court on November 1, 2017 authorizing the assumption of the Debtor's respective leases with 17-19 Associates and 133 E. 58th Street. The initial payments due under these lease assumption orders will have been funded by the Debtor's principals

Having assumed its leases, which constitute the Debtor's primary assets, and the locations from which the Debtor can operate its business, the Debtor is now in a position to submit this Plan for confirmation.

On July 24, 2017, the Debtor sought authority from the Bankruptcy Court to retain the law firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C., as its counsel. The application was granted pursuant to an order signed on July 31, 2017, effective as of the Petition Date.

The Court has fixed November 17, 2017 as the last date for prepetition claims to be filed against it with the Bankruptcy Court.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.    Priority and Secured Tax Claims

2.02    Class 2.    Marc Baum Secured Claim

2.03    Class 3     Itria Ventures Secured Claim

2.04    Class 4.    General unsecured claims allowed under §502 of the Code or any claim against the Debtor that is not an administrative claim, an administrative tax claim, a U.S. Trustee Fee (as defined herein) , a priority tax claim, a priority non-tax claim, or a secured claim.

2.05    Class 5.    Equity interests of the Debtor.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES, PRIORITY TAX CLAIMS AND POST-PETITION TAX CLAIMS

3.01    Unclassified Claims.  Under §1123(a)(1), certain types of administrative expenses claims and priority tax claims are not in classes.

3.02    Administrative Expense Claims.  Each holder of an administrative expense claim allowed under §503 of the Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  See treatment under Class 1.

3.04    Post-Petition Tax Claims.  All proofs of administrative claims for post-petition tax claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) 60 days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such year or period with the applicable governmental unit.  Any holder of a post-petition tax claim that does not file a proof of administrative claim by the applicable bar date shall be forever barred from asserting any such post-petition tax claim against the Reorganized Debtor (as defined herein) or its property, whether any such post-petition tax claim is deemed to arise prior to, on, or subsequent to the Effective Date.

The New York State Dept. of Finance filed an administrative claim for postpetition taxes in the amount of $2,931.04.

The Debtor shall serve notice of any administrative claims bar date to the relevant

taxing authorities, including New York State, New York City, and the Internal Revenue Service.

       3.05    <u>United States Trustee Fees.</u>  All fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

# ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

       4.01    Claims and interests shall be treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
|---|---|---|
| Class 1 – Priority and Secured Tax Claims ($1,480,000)[1] | Unimpaired | Class 1 is unimpaired. Each holder of a priority and secured tax claim will be paid over a five (5) year period from the date of the Order for Relief in equal quarterly payments with interest at the applicable statutory rate, with the first quarterly payment to be made three months after the Effective Date. |
| Class 2 – Marc Baum Secured Claim ($700,000.00) | Impaired | Class 2 is impaired. The Marc Baum Secured Claim shall be paid at an interest rate of 4.0% per annum, payable monthly in arrears with a 25-year amortization along with a balloon payment of the principal amount on the maturity date, which shall be on the fifth (5th) anniversary of the Effective Date and may be prepaid at any time without premium or penalty. |
| Class 3 – Itria Ventures Secured Claim ($83,750) | Impaired | Class 3 is impaired. The holder of the Itria Ventures secured claim shall be paid $6,250 per month until it is satisfied. The first payment shall be made on the Effective Date, with each successive payment to be made every 30 days after the Effective Date until the Itria Ventures secured claim is satisfied. |
| Class 4 – Unsecured Claims ($287,000)[2] | Impaired | Class 4 is unimpaired. Each holder of a class 4 unsecured claim, except with regard to any disputed claims, shall receive cash 15% of their allowed unsecured claim in three equal payments, with the first payment to be made on the Effective Date, and the remaining two payments to be made on the anniversary |

---

[1] The Debtor believes that the priority and secured tax claims as filed is incorrect. The Debtor intends on resolving the amount of the priority and secured tax claims consensually or by filing a claim objection.

[2] The amount of unsecured claims does not include claims scheduled or filed by 17-19 Associates or 133 E. 58th Street as those claims are being paid pursuant to orders authorizing the assumption of the Debtor's respective leases with 17-19 Associates or 133 E. 58th Street. The amount of unsecured claims also does not include the scheduled claims of Joseph Barron or Garry Steinhart, who are waiving their claims as part of their new value contribution under the Plan.

|  |  | of the Effective Date. |
| --- | --- | --- |
| Class 5 – Equity Interests | Unimpaired | Class 4 is unimpaired.  Each holder of a class 5 equity interest and shall receive no distribution, but shall retain their respective equity interests in the Debtor in consideration for their new value contribution, which consists of (1) contributing $251,000 to pay cure amounts with respect to the Debtor's leases with 133 E. 58th Street LLC and 17-19 Associates LLC, (2) Joseph Barron and Garry Steinhart's agreement to withdraw their scheduled claims in the aggregate amount of $153,000 and waive any distribution on account of their claims; (3) and a guarantee of payments to be made under the Plan. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.  Debtor shall file objections to claims, if any, within thirty (30) days after the date of confirmation of the Plan.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019. Within fifteen (15) days after the entry of a final order resolving an objection to a disputed claim, the Reorganized Debtor shall distribute all Cash, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly disputed claim that has become an allowed claim.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is not assuming any leases under the Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01    Funding. Payments and distributions to be made under the Plan to the holders of administrative claims, priority tax claims, secured tax claims, Bankruptcy Fees and unsecured claims shall be distributed to creditors as set forth herein from either (a) cash

assets of the Debtor existing on the confirmation date; (b) cash generated from operations following the confirmation date; and (c) such other assets as may be identified by the Debtor prior to confirmation. Prior to the confirmation date the Debtor shall segregate sufficient cash to pay or reserve for all payments that are to be made by the Debtor on the Effective Date pursuant to the terms of the Plan, if any.

**7.02 Feasibility. For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless such liquidation is proposed in the Plan. This Plan calls for the continuation of the Debtor and the funding of distributing to creditors from the cash on hand and ongoing operations, which the Debtor believes it will be able to meet in accordance with the Debtor's projections, which will be filed prior to the hearing on the conditional approval of this plan as a disclosure statement The Debtor has also concluded that the Plan provides each creditor with a recovery with a present value greater than the distribution such person would receive if the Debtor was liquidated. Holders of allowed administrative claims, secured tax claims and priority tax claims might be paid in a liquidation, but unsecured creditors are unlikely to receive any distribution. Accordingly, the Debtor believes that comparing the value of the distributions available through a Chapter 7 liquidation to the value obtainable under the Plan reveals that creditors will receive for great value under the Plan. Thus, the Plan satisfies the "Best Interest of Creditors" test.**

7.03 Alternatives to Confirmation and Consummation of the Plan. If the Plan is not confirmed and consummated, the theoretical alternatives include: (a) liquidation of the Debtor under Chapter 7 of the Code, or (b) an alternative plan of reorganization.

If no plan can be confirmed, the Debtor's bankruptcy case likely will be converted to a case under chapter 7 of the Code in which a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to its creditors in accordance with the priorities established by the Code. The Debtor estimates that under Chapter 7 of the Bankruptcy, unsecured creditors would receive a distribution of far less than that proposed by this Plan, if any, because, aside from the Debtor's good will and its security deposit with its landlords, the Debtor has minimal assets for a Chapter 7 Trustee to liquidate, as its secured claims and priority and secured tax claims have priority over all other debts.

7.04 Alternative Plan of Reorganization. If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan. Such a plan might involve a complete liquidation of the Debtor's business. Because the Debtor has minimal tangible assets to liquidate, the Plan, as proposed, will yield the greatest possible recovery for creditors in that unsecured creditors will receive 15% of their allowed claim over three years. Thus the Plan enables creditors and all parties-in-interest to realize the most value under the circumstances.

# ARTICLE VIII
# GENERAL PROVISIONS

8.01 <u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 <u>Effective Date of the Plan.</u> The Effective Date of this Plan is the first business day after which all conditions to the effectiveness of the Plan, specified in section 8.16 herein, have been satisfied.

8.03 <u>Severability.</u> If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 <u>Binding Effect.</u> The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05 <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 <u>Post-Confirmation Management.</u> The Debtor will continue in existence post-confirmation as the "Reorganized Debtor", and its officers and directors and owner shall remain in place unchanged. The Debtor will continue to be owned Joseph Barron and Garry Steinhart and managed by Joseph Barron, the Debtor's president.

8.08 <u>Administrative Bar Date</u> means (i) any date set by order of the Bankruptcy Court subsequent to which a Proof of Administrative Claim is not timely filed, or (ii) if no such date is set, the first business day that is at least thirty (30) days after the Effective Date. Notice of the administrative bar date will be provided to all known creditors and parties in interest on the Effective Date.

8.09 <u>Administrative Claim</u> means a claim for, or request for payment of, an administrative expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a final order to the extent such objection has been resolved in favor of the holder of such claim.

8.10 <u>Administrative Expense</u> means any cost or expense of administration of this case, other than Bankruptcy Fees, allowable under §§503(b), 330 or 331 of the Code.

8.11    Certain Federal Income Tax Consequences and General Tax Consequences.  The confirmation and execution of the Plan may have tax consequences to holders of claims and interests.  The Debtor does not offer an opinion as to any federal, state, local or other tax consequences to holders of claims and interests as a result of the confirmation of the Plan.

*ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS WITH RESPECT TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.  THIS PLAN IS NOT INTENDED, AND SHOULD NOT BE CONSTRUED, AS LEGAL OR TAX ADVICE TO ANY CREDITOR.*

8.13    Other Information.   Inquiries regarding information not contained in this Plan may be made by contacting **Robert M. Sasloff, Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Floor, New York, New York 10022, Tel. No.: 212-603-6329.**

8.14.    Vesting of Property.  On the date of confirmation, title to and possession of any and all property of the estate, real or personal, shall be re-vested in the Reorganized Debtor free and clear of all liens, claims, interests and encumbrances of any kind, subject to an except as otherwise provided for in this Plan.

8.15    Conditions to Effectiveness of Plan.  The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

(a)    The Bankruptcy Court enters the Confirmation Order;

(b)    The Confirmation Order becomes a final order (unless waived by or otherwise provided by Court order);

## ARTICLE IX
## DISCHARGE, INJUNCTION, RELEASE

**9.01    Discharge.    On the date of confirmation of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in §1141(d)(1)(A) of the  Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in §1141(d)(6)(A) if timely complaint was filed in accordance with rule 4007(c) of the Federal  Rules of Bankruptcy Procedure; or (iii) of a kind specified in §1141(d)(6)(B).**

**9.02    Injunction:    Except (i) as otherwise provided in the Plan or (ii) in any final order, all persons who have held, hold, or may hold claims against, or interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any**

**action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the estate retained by the Reorganized Debtor or distributed to creditors under this Plan**.

**9.03    Release:    Except as otherwise provided in the Plan, upon the Effective Date, in consideration of the cash and other property to be distributed to or on behalf of the holders of claims and interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each creditor and interest holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its creditors or interest holders ever had or now have through the Effective Date in connection with their claim or interest (including, without limitation, any claims the Debtor may assert on their own behalf or on behalf of creditors or interest holders pursuant to sections 510 and 542 through 553 of the Code, any claims creditors or interest holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of this case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in the Plan or the confirmation order shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code; any environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the confirmation order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.  Nothing in the confirmation order or the Plan shall exculpate any party from any liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state.**

**9.04    Limitation of Liability:    Section 1125(e) of the Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan.  Pursuant to section 1125(e), as set forth herein, neither the Debtor, the interest holders nor any of their respective officers, directors, members, general partner, managers or employees (acting in such capacity), nor any professional person employed by any of them, if an, (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this case or the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal**

**conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the confirmation order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to the Plan.**

# ARTICLE X
# RETENTION OF JURISDICTION

10.1 <u>Retention of Jurisdiction.</u> Notwithstanding the entry of the confirmation order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Insure that the Plan is consummated, and to enter any order pursuant to section 1142(b) of the Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b) Consider any modification of the Plan proposed pursuant to section 1127 of the Code and Bankruptcy Rule 3019;

(c) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any claim or Interest, including, without limitation, the resolution of any request for payment of any administrative expense, the resolution of any and all objections to the allowance or priority of claims or interests, and the resolution of any adversary proceeding;

(d) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Code or the Plan, for any period ending on or before the Effective Date;

(e) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all claims arising therefrom;

(f) Ensure that distributions to holders of allowed claims and allowed interests are accomplished pursuant to the provisions of this Plan;

(g) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h) Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or to enforce all orders, judgments,

injunctions, and rulings entered in connection with the chapter 11 case, including, but not limited to any order necessary to enforce the provisions of Article V of the Plan;

(i) Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(j) Modify the Plan before or after the Effective Date pursuant to section 1127 of the Code, or any contract, instrument, release or other agreement or document created in connection with the Plan;

(k) Remedy any defect or omission or reconcile any inconsistency in any order, the Plan or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l) Issue any injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(m) Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n) Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o) Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan; and

(p) Enter an order or final decree concluding the chapter 11 case.

10.02 <u>Avoidance Actions.</u> The Debtor does not believe there are any avoidance actions to pursue and therefore does not intend to file any avoidance actions.

10.03 <u>Post-Closing Jurisdiction</u>. Notwithstanding the entry of a final decree or an order closing the chapter 11 case, the Bankruptcy Court shall retain jurisdiction to reopen the chapter 11 case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## **RISK FACTORS**

Although the Debtor believes that it will be able to meet all of the obligations that it is undertaking pursuant to the Plan, there can be no assurance that future events will not cause the Debtor to default on one or more of its obligations under the Plan.

**Dated:** New York, New York
November 30, 2017

Respectfully submitted,

**DEFINITIONS PRIVATE TRAINING GYMS, INC.**

By: /s/ Joseph Barron
 **Joseph Barron, President**

**ROBINSON BROG LEINWAND GREENE
 GENOVESE & GLUCK P.C.**

By: /s/ A. Mitchell Greene
 **A. Mitchell Greene**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-3600